In re SAFETY–KLEEN CORP.,
et al., Debtors.

Safety–Kleen Creditor Trust, by and
through Oolenoy Valley Consulting,
LLC, Trustee, Plaintiff,

v.

Eimco Process Equipment
Co., Defendant.

Bankruptcy No. 00–2303(PJW).
Adversary No. A 02–3745(PBL).

United States Bankruptcy Court,
D. Delaware.

Oct. 5, 2005.

Gregg M. Galardi, for Debtor.

### *OPINION*[1]

PAUL B. LINDSEY, Bankruptcy Judge.

#### I. *Background*

Safety–Kleen Corp. (the "Debtor"), along with certain of its subsidiaries, filed its Chapter 11 bankruptcy petition on June 9, 2000. Pursuant to the Modified First Amended Joint Plan of Reorganization, the Safety–Kleen Creditor Trust (the "Trustee") was vested with authority to pursue the avoidance actions on behalf of the Debtors. This adversary proceeding was filed on May 30, 2002 by the Safety–Kleen Creditor Trust ("Plaintiff"), to avoid and recover pursuant to §§ 547(b) and 550,[2] one allegedly preferential transfer in the amount of $28,846.30.[3] An amended complaint was filed on January 27, 2004 and

---

1. This opinion will constitute the findings of fact and conclusions of law of the Court required by Federal Rule of Bankruptcy Procedure 7052.

2. Hereinafter, references to statutory provisions by section number alone will be to provisions of Title 11 of the United States Code unless otherwise noted.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and it is a core proceeding under 28 U.S.C. § 157(b)(2), (A), (B), (F) and (O). Venue is

the defendant, Eimco Process Equipment Co. ("Eimco") answered on February 17, 2004.

The parties completed discovery and this matter was scheduled for trial on June 29, 2005. The parties submitted their Joint Pretrial Memorandum as required under the General Order Re: Pretrial Procedures in Adversary Proceedings Set for Trial before this Court. However, because only legal issues remained to be resolved, the parties opted in lieu of trial, to present brief oral argument on the issues set forth in the Joint Pretrial Memorandum.

## II. *Facts*

The facts surrounding the transfer were stipulated to by the parties and are therefore, not in dispute. The transfer at issue was the refund of a duplicate payment that Eimco mistakenly made to the Debtor. Eimco made its first payment for Invoice No. 59090617019 to the Debtor on August 27, 1999 in the amount of $28,846.30, and again on October 8, 1999. According to an internal email at Safety–Kleen, the Debtor's accounting department became aware of the mistake on or around March 27, 2000 (Eimco Exhibit 1) and began the refund process the next day. The Debtor used a standard form to process the check, which it regularly utilized to issue refunds of duplicate payments. The form was entitled "Safety–Kleen Corp. Check Request" and included a box to be checked for duplicate payments. (Eimco Exhibit 2) The refund was made by check from the Debtor's account on April 14, 2000.

## III. *Discussion*

### A. Elements of Section 547(b)

In order to recover on its Complaint for the allegedly preferential transfer in the amount of $28,846.30, Plaintiff must prove by a preponderance of the evidence, each element under § 547(b). Subsection (b) provides:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> > (A) the case were a case under chapter 7 of this title;
> >
> > (B) the transfer had not been made; and
> >
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The parties have stipulated that all elements except subsection (b)(2) have been satisfied. Plaintiff however, contends that it has carried its burden with respect to each subsection.[4]

In support of this contention, Plaintiff offered two exhibits: the April 14, 2000

---

proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

4. Section 547(g) provides in part, that "the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section."

cancelled check (No. 1892155) in the amount of $28,846.30, and Eimco's Responses to Plaintiff's Combined First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents Directed to Defendant, dated September 16, 2004 ("Responses to Discovery"). Plaintiff relies on the admissions made by Eimco in its Responses to Discovery to establish that Eimco was a creditor of the Debtor and that the transfer was made for or on account of an antecedent debt. In response to Plaintiff's Request for Admissions numbered 2, 3, and 5, Eimco admitted that it had a right to payment based upon an obligation owed to it by the Debtor at the time of the transfer, that the transfer reduced or satisfied a debt owed to it by the Debtor as of the date the transfer was made, and that it was a creditor of the Debtor at the time of the transfer. (Plaintiff's Exhibit PX2, at 2)

As further evidence for its case in chief, Plaintiff cites to *In re Jan Weilert RV, Inc.*, 315 F.3d 1192 (9th Cir.2003), where the plaintiff had proven a prima facie case that a refund of a duplicate payment was a preferential transfer.[5] *Weilert* involved an appeal by the defendant, Bank of the West, from the District Court which had reversed the Bankruptcy Court's finding that the refund of a mistaken double payment with regard to a financed sale of a new vehicle was made according to ordinary business terms. The Bankruptcy Court had granted summary judgment on the § 547(b) elements for the plaintiff and on the contemporaneous exchange for new value defense for the defendant. *Id.*, at 1195. Plaintiff therefore contends that the transfer is subject to avoidance and recovery for the benefit of the Debtor's creditors.

■ Eimco's primary argument in opposition is that the Debtor had no legal or equitable interest in the duplicate payment. Consequently, it was not property of the estate under § 541, because the mistaken payment was owed to Eimco and the Debtor had a legal obligation to return it. Furthermore, Eimco disputes that *Weilert* is authority for the proposition that a duplicate payment is a preference under § 547(b) because the issue on appeal was whether the payment had been made in the ordinary course of business. The Court of Appeals had no occasion to address the requirements for avoidance and recovery of a preferential transfer. Eimco also argues that the payment did not deplete the Debtors' estate and therefore, it was not a preference, making dismissal of this action appropriate. Eimco, however, has not cited any authority with respect to its contention that the duplicate payment was not property of the estate.

■ Section 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(a)(1) is very broad and its underlying purpose is to bring into the estate all interests of the debtor, whether tangible or intangible, at the commencement of the case. 5 Collier on Bankruptcy P 541.11 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Based upon the facts as presented by the parties, it is clearly evident that the duplicative payment at issue, was held by the Debtor for at least six months and was commingled with other cash assets of the Debtor. The Debtor had an interest in

---

**5.** The elements of § 547(b) were not on appeal in *Weilert*, but rather only whether the refund payment was made in the ordinary course of business. *Weilert,* at 1194.

that payment and it was, therefore, property of the estate.

■ As for the other requirements of § 547(b), there is no question that the transfer was made within ninety days of the petition date, that Eimco was a creditor of the Debtors, the Debtor was insolvent at the time of the transfer, that the payment was made for or on account of an antecedent debt, and Eimco received more than it would have under a hypothetical chapter 7 case and the transfer had not been made. Therefore, Plaintiff has satisfied each of the elements of § 547(b) by a preponderance of the evidence and the $28,846.00 payment is clearly a preferential transfer. However, Eimco has raised an affirmative defense under § 547(c)(2) which may preclude Plaintiff from exercising its avoidance powers and its ability to recover the preferential payment.

### B. Ordinary Course of Business Defense

■ The ordinary course of business defense under § 547(c)(2) affords a complete defense to preference liability provided that the defendant meets the requisite elements:

The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms

11 U.S.C. § 547(c)(2). Congress enacted this subsection of § 547 in order "to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 1st Sess. 88, *reprinted* in 1978 U.S.Code Cong. & Admin.News 5787, 5874. "Thus, the court's general inquiry in these preference cases is to determine whether the payments to a creditor made in the 90 days preceding a filing for bankruptcy were in response to a zealous creditor's attempt to collect on a debt through preferential treatment ahead of other creditors, or an attempt by the debtor to maintain normal business practices in hope of staving off bankruptcy." *In re Global Tissue L.L.C.*, 106 Fed.Appx. 99, 2004 WL 1510091 (3rd Cir.2004).

To that end, § 547(c)(2)(A) requires this Court to examine the underlying debt for which the transfer was made and determine whether that debt was incurred in a normal or routine transaction between the parties. Subsection (B) focuses on whether the transfer itself was consistent with the past practices of the parties business dealings. And lastly, subsection (C), requires that the creditor prove that the transfer falls within the industry norm.

Plaintiff argues that Eimco has not satisfied any of the elements of § 547(c)(2) stating that neither the debt, nor the transfer, was made in the ordinary course of business or financial affairs of the Debtor and Eimco. Plaintiff again directs the Court's attention to *Weilert* where the Court of Appeals spoke of the refund of mistaken payments as "exceptional." *Weilert*, 315 F.3d at 1200. Plaintiff also maintains that Eimco has not offered any evi-

dence that the transfer was ordinary in the industry and thus, has failed to establish that it was made according to ordinary business terms. Not surprisingly, Eimco disagrees, and in support of its position, also seeks to rely on *Weilert* because the Court found and held that the refund payment was made in the ordinary course of business.

■ According to the facts as admitted in the Joint Pretrial Memorandum, the Debtors were a hazardous and industrial waste services company, providing collecting, processing, recycling and disposal services with more than two hundred operating facilities throughout the United States and Canada. Eimco provided goods and services to the Debtor prior to the petition date. It appears and there is no evidence to the contrary, that the debt and the transfer were incurred in the routine and normal course of transactions between the Debtor and Eimco. Therefore, both § 547(c)(2)(A) and (B) have been satisfied.

■ With regard to the last prong of § 547(c)(2), Eimco relies heavily on the *Weilert* case in support of its defense. As stated previously, the Bankruptcy Court in *Weilert* held that the refund payment was made in the ordinary course of business and entered judgment in favor of the defendant, Bank of the West, as to that transfer. The Trustee was successful on appeal to the District Court, which reversed the lower court's holding because it found that Bank of the West did not produce sufficient evidence of the industry standard. However, on further appeal to the Ninth Circuit, the Court of Appeals carved out a very limited exception to the ordinary business terms prong of § 547(c)(2)(C), stating that while evidence of the industry standard is ordinarily re-

quired, "the problem of refunds of mistaken payments is exceptional." *Weilert*, 315 F.3d at 1200. The Court went on to explain its rationale for dispensing with such requirements under those circumstances:

> Like all recipients of mistaken payments, Debtor was subject to a legal obligation promptly to refund the money. It fulfilled this obligation by issuing a refund check within three days, which would clearly have fallen within the ordinary range no matter what the relevant industry or practice. Here, the "ordinariness" of the Debtor's compliance with its legal obligation is obvious, and additional evidence of industry practice could not have assisted the court in recognizing that the refund was "made according to ordinary business terms." The law does not inflexibly demand form over substance.

*Id.*

Additionally, the Court established a framework for analyzing the refund of a mistaken payment in the context of subsection (C). The Court held that if a transferee could prove that (1) money was mistakenly transferred to the debtor, (2) the mistake was quickly discovered, (3) a refund was immediately requested, and (4) the refund was tendered within three days, then evidence regarding the standard in the industry would not be required for a creditor to be protected under the safe harbor of § 547(c)(2). *Id.*

In *Weilert*, Bank of the West made a payment to the debtor on January 3, 1997 and made a duplicate payment four days later. Bank of the West discovered its mistake and requested that the transfer be refunded. The debtor issued a check for the overpayment on January 10, 1997 and the check cleared on January 16, 1997.

Eimco argues that the while the time frames were slightly longer in this instance, the refund process was initiated the day after the duplicate payment was discovered and the check was issued within two and one-half weeks later.

## IV. *Decision*

In this instance, it is undisputed that the transfer was a mistaken duplicate payment from Eimco to the Debtor. As soon as the mistake was discovered, the process for issuing a refund was initiated. Safety–Kleen issued an internal memorandum and a check request which it regularly used for refunding duplicate payments. The refund was processed the next day and a check was issued shortly thereafter. Even though the time was more than three days here, it was still prompt enough to forego separate evidence of industry practice and fit within the exception carved out by the Ninth Circuit. This Court finds that the transfer in question was in payment of a debt incurred by Eimco in the ordinary course of business or financial affairs of the Debtor and Eimco.

Eimco has satisfied the burden of proof placed upon it by § 547(g), and therefore is entitled to judgment in its favor and against Plaintiff. The transfer is not avoidable pursuant to § 547 and therefore not recoverable by Plaintiff under § 550. Plaintiff shall take nothing by reason of its Complaint herein.

An appropriate judgment follows.

### JUDGMENT

For the reasons set forth in the accompanying Opinion of even date herewith, Judgment is rendered in favor of Eimco Process Equipment Co., and against the Safety–Kleen Creditor Trust for the transfer in the amount of $28,846.30. The Safety–Kleen Creditor Trust shall take nothing by reason of its complaint.